UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY A. CASHMORE,

                    Plaintiff,

        v.                                                      **DECISION AND ORDER**

                                                                18-CV-1198S

FINANCIAL INDUSTRY REGULATORY
AUTHORITY,

                    Defendant.

## I.        Introduction

This is a removed contract action challenging a Letter of Acceptance, Waiver and Consent (or "AWC") Plaintiff executed with Defendant Financial Industry Regulatory Authority (or "FINRA").  Plaintiff also challenges the continuing effects of that AWC after Plaintiff ceased to be under FINRA's jurisdiction.  This AWC is listed on Defendant's public disclosure database; Plaintiff seeks this record expunged.

The issue here arises from the convergence of securities and contract law.  Plaintiff argues that his signing of the AWC was unconscionable and hence not enforceable under New York contract law.

Before this Court is Defendant's Motion to Dismiss[1] (Docket No. 4) pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(6), and (h)(3).  For the reasons stated herein, Defendant's Motion to Dismiss (Docket No. 4) is GRANTED.

---

[1]In support of this motion, Defendant submits its Memorandum of Law, Docket No. 4, as well as the Notice of Removal papers, Docket No. 1.  Plaintiff then filed his timely response, Docket Nos. 12 (Declaration with exhibits), 13 (Memorandum of Law), and Defendant replied Docket No. 14.

## II.   Background

A.  Facts

1.  Plaintiff and AWC

According to Plaintiff's state court Petition, Plaintiff was a registered agent with FINRA and was employed by LPL Financial, LLC ("LPL") (Docket No. 1, Notice of Removal, Ex. B, Pet., <u>Cashmore v. Financial Industry Regulatory Auth.</u>, Index No. 815371/2018, N.Y. Sup. Ct. Erie County, at 2 (hereinafter "Pet.")).

On or about September 2010, customers of LPL and Plaintiff filed a complaint with FINRA alleging Plaintiff and LPL provided misleading sales literature and violated FINRA regulations (<u>id.</u> at 3).

On September 16, 2012, about one week before an arbitration hearing with his customers, FINRA presented the AWC to Plaintiff (<u>id.</u>, Ex. 1).  As advised by counsel for Plaintiff and LPL, Plaintiff signed the AWC on October 2, 2012 (<u>id.</u> at 4).  In signing the AWC, Plaintiff adopted its findings that he prepared and distributed misleading sales literature to his clients and prospective customers and failed to retain copies of this sales literature, both in violation of NASD/FINRA conduct rules (Docket No. 4, Def. Memo. at 6-7).  In so agreeing Plaintiff also waived the right to litigate the charges or appeal them to the Securities and Exchange Commission (or the "SEC") (Docket No. 1, Pet. at 26; Docket No. 4, Def. Memo. at 4).

On or about October 10, 2012, the consumer arbitration settled (Docket No. 1, Pet. at 4).  Plaintiff then paid a sanction of $5,000 pursuant to the AWC (<u>id.</u>).  FINRA suspended Plaintiff's registration from FINRA for one month.

Plaintiff learned that LPL did not intend to retain him after his suspension ended and Plaintiff resigned from LPL on October 22, 2012.  (Id.)  Plaintiff also declined reinstatement of his registration with FINRA but remained registered with the SEC (id. at 5; Docket No. 13, Pl. Memo. at 18 n.2).

### 2.  FINRA

FINRA is a not-for-profit Delaware corporation and self-regulatory organization (or "SRO") registered with the SEC as a national securities association, 15 U.S.C. §§ 78a, et seq. (Docket No. 1, Notice of Removal ¶ 4).  It is the successor to the National Association of Securities Dealers, Inc. ("NASD") (Docket No. 4, Def. Memo. at 1 n.1; see Docket No. 1, Pet. at 2).  Under the Securities Exchange Act of 1934, FINRA has the power to discipline its members, 15 U.S.C. § 78o-3(b), (h) (Docket No. 1, Notice of Removal ¶ 4).

The Securities Exchange Act provides that the exclusive judicial remedy for FINRA discipline is to appeal first to the SEC and then to the United States Court of Appeals (Docket No. 1, Notice of Remand ¶ 4).

As summarized by the district court in Buscotto v. Financial Industry Regulatory Authority,

> Under the [Securities] Exchange Act, one of FINRA's duties is to establish and maintain a system for collecting and retaining "registration information" about member firms and their current and former registered representatives, see 15 U.S.C. § 78o-2(i)(1)(A), defined as information about "disciplinary actions, regulatory, judicial, and arbitration proceedings." 15 U.S.C. § 78o-3(i)(5). FINRA is required to make that information available to the public through an electronic process. See 15 U.S.C. § 78o-3(i)(1)(B). To carry out its statutory duties, FINRA established the CRD database and BrokerCheck, an internet resource that the public can use to obtain registration information about current and former representatives.

Buscetto v. Financial Indus. Regulatory Auth., No. CIV.A. 11-6308 JAP, 2012 WL 1623874, at *3 (D.N.J. May 9, 2012) (see Docket No. 4, Def. Memo. at 3).

3

The CRD (short for "Central Registration Depository," 15 U.S.C. § 78o-3(i)(1)(A)) contains registration information and regulatory and enforcement actions taken against securities industry personnel (id.).  Portions of a representative's CRD record is available to the public through the online FINRA BrokerCheck program and a toll-free number (id.), 15 U.S.C. § 78o-3(i)(1)(B).  The purpose of BrokerCheck is to inform the marketplace of the records of present and former representatives and associates, id., § 78o-3(1)(1)(B), (5) (id. at 4-5).

FINRA's BrokerCheck database contains the consumer complaint against Plaintiff and the AWC (Docket No. 1, Pet. at 4).  Plaintiff contends that the majority of the disclosures published in BrokerCheck are permanent unless eligible for expungement under FINRA regulations, FINRA Code of Procedures, Rule 9216 (2018), but AWCs are not eligible for expungement (id.).

In lieu of litigating disciplinary complaints, associated persons may execute a letter waiving rights to a hearing and accepting findings of violation (the AWC), FINRA Rule 9216(a) (id. at 6).

B.  Procedural History

1.  State Court Petition

Six years after entering the AWC, Plaintiff on October 1, 2018, filed his Petition in New York State Supreme Court seeking a declaratory judgment that his entry into the AWC was unconscionable (Docket No. 1, Pet. at 5-15; Docket No. 12, Pl. Atty. Decl. ¶ 4, Ex. 2).

The First Cause of Action of the Petition alleges that entry into the AWC was unconscionable as a matter of contract law (Docket No. 1, Pet. at 5-12), arguing that, as

a nonlawyer, Plaintiff had no knowledge of FINRA disciplinary procedures when he signed (id. at 6-9).  He also claims that the AWC was substantially unconscionable by requiring Plaintiff to waive any right to claim any bias or prejudgment of Defendant's general counsel or waive claim that he had any offer, threat, inducement, or promise leading to entering into the AWC (id. at 9-10).

In the Second Cause of Action Plaintiff seeks a permanent injunction against the continued publication of the AWC on BrokerCheck (id. at 12-15).

### 2. Removal

On October 29, 2018, FINRA filed the Notice of Removal pursuant to 28 U.S.C. § 1441 because this case alleges this Court's federal question jurisdiction, 28 U.S.C. § 1331; see 15 U.S.C. § 78aa (exclusive federal court jurisdiction for violations of the Securities Exchange Act) (Docket No. 1, Notice of Removal ¶¶ 6, 7).  There, Defendant argues that the Petition "specifically attacks the validity and merits of a permanent bar order imposed by FINRA against Cashmore, pursuant to" the AWC (id., Notice ¶ 3).

### 3. Defendant's Motion to Dismiss (Docket No. 4)

On November 2, 2018, Defendant moved to dismiss (Docket No. 4), arguing that this Court lacks subject matter jurisdiction because the Securities Exchange Act exclusively provides whatever judicial relief is available for Plaintiff (id., Def. Memo. at 9-15).

Responses to the motion were due on December 14, 2018 (Docket No. 6), but upon the motion to extend (Docket No. 7), responses were due on December 21, 2018, and replies by January 11, 2019 (Docket No. 8).  Following timely submissions by the parties, the motion then was deemed submitted without oral argument.

5

### III.   Discussion

A.  Applicable Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).  To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.

As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any

document incorporated in it by reference. <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

If the Court determines at any time that it lacks subject matter jurisdiction under Rule 12(b)(1), the action must be dismissed, Fed. R. Civ. P. 12(h)(3).

### B. Motion to Dismiss

#### 1. Defense Arguments

FINRA claims absolute immunity as a securities regulator, <u>D'Alessio v. New York Stock Exchange</u>, 258 F.3d 93, 105 (2d Cir. 2001) (Docket No. 4, Def. Memo. at 10-11). Defendant raises other defenses, such as the lack of subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies and Plaintiff had no legal right to expungement or vacatur of the six-year-old securities disciplinary record (<u>id.</u> at 9-10, 13-15).

#### 2. Plaintiff's Response (Docket Nos. 12, 13)

Plaintiff argues that this Court has jurisdiction over this contract dispute because Congress did not provide administrative relief for a contract dispute such as this (Docket No. 13, Pl. Memo. at 8). He denies that exhaustion of administrative remedies is applicable (<u>id.</u> at 9-11, 12-13 (exception for exhaustion requirement from undue prejudice or doubts that agency is empowered to grant relief)). Plaintiff denies that he is seeking

review of a final disciplinary sanction; this action seeks contract relief (id. at 10-11).

Plaintiff alternatively claims that the AWC is defamatory and, under FINRA's own rules, it

should not be released "potentially defamatory language" in the BrokerCheck (id. at 13),

FINRA Rule 8312(d).   Plaintiff denies that absolute immunity extends to a declaratory

judgment (which he seeks) but only applies to preclude monetary damages (id. at 14-15).

### 3.   Defendant's Reply (Docket No. 14)

In reply, Defendant argues that (however casts) Plaintiff seeks to vacate a FINRA

disciplinary action (Docket No. 14, Def. Reply Memo. at 1).   Congress did intend an

exclusive review scheme (by appeal to the SEC then judicial review of the Commission's

decision) for challenged FINRA discipline (id.).   Plaintiff's execution of the AWC here

waived Plaintiff's right to review to the SEC.   Plaintiff's choice to settle in 2012 does not

create a cause of action in this Court in 2018.   (Id. at 3.)

FINRA also invokes its absolute immunity for injunctive and declaratory relief as

well as against damages (id. at 4), see Buscetto, supra, 2012 WL 1623874, at *4.   Finally,

FINRA Rule 8312 exists to provide information to the investing public about past and

present securities representatives by disclosing their records (id. at 7; see also Docket

No. 4, Def. Memo. at 5).

### 4.   Plaintiff's Claims and FINRA Discipline

This Court takes judicial notice of FINRA and formerly the NASD's rules under

Federal Rule of Evidence 201 (see Docket No. 4, Def. Memo. at 5 n.2).

However asserted, Plaintiff seeks abrogation of the AWC and expungement of

FINRA discipline from FINRA's database, BrokerCheck.   By its terms, the AWC is his

acceptance of FINRA discipline (Docket No. 1, Pet., Ex. 1).   Plaintiff ignores the regulatory

nature of his relationship with FINRA despite being no longer registered with that SRO. Plaintiff's case is a collateral attack on the final disciplinary action and his agreement to the sanction imposed under the AWC.

FINRA invokes several defenses including its absolute immunity (Docket No. 4, Def. Memo. at 9-15), all to the point that Plaintiff's sole remedy is administrative and that this Court cannot remedy.  This Court holds that FINRA enjoys absolute immunity that deprives this Court of jurisdiction over this matter (see Docket No. 4, Def. Memo. at 10-11, citing cases upholding absolute immunity).

FINRA as a self-represented organization enjoys absolute immunity "because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy . . . [FINRA is] protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions," Empire Financial Group, Inc. v. Financial Indus. Regulatory Auth., Inc., No. 08-80534-CIV, 2009 WL 10644856, at *6 (S.D. Fla. June 15, 2009) (quoting Weissman v. Nat'l Ass'n of Secs. Dealers, Inc., 500 F.3d 1293, 1296 (11th Cir. 2007)); D'Alessio, supra, 258 F.3d at 104; Buscetto, supra, 2012 WL 1623874, at *4 n.4 (Docket No. 14, Def. Reply Memo. at 4).  FINRA "stands in the shoes of the SEC in interpreting securities laws for its members and in monitoring compliance with those laws," D'Alessio, supra, 258 F.3d at 105.  The Second Circuit in D'Alessio notes "'absolute immunity is particularly appropriate in the unique context of the self-regulation of the national securities exchanges,'" 258 F.3d at 105 (quoting Barbara v. New York Stock Exchange, 99 F.3d 49, 59 (2d Cir. 1996), abrogated on other grounds, Merrill Lynch Pierce, Fenner & Smith Inc. v. Manning, 578 U.S. ___, 136 S.Ct. 1562, 1567 & n.1, 194 L.Ed2d 671 (2016)).

9

Here, FINRA is performing the regulatory functions of disciplining its members, representatives, and associates, and maintaining and publishing reports of final disciplinary action of a former and present representative.  All of this is pursuant to its statutory mandate to inform the investing public about a representative whom they intend to transact business with, 15 U.S.C.§ 78o-3(i); see also North v. Smarsh, Inc., 160 F. Supp. 3d 63, 87-88 (D.D.C. 2015) (FINRA enjoys absolute immunity when it pursues disciplinary cases against registered representative in securities industry, "that is precisely what Congress intended FINRA to do").

The court in Empire Financial Group (EFG) held that "claims against SROs are barred if they attack conduct that falls within the scope of the SROs' regulatory role, whether the lawsuits are pleaded as federal claims, state-law claims, statutory claims, or common law claims," 2009 WL 10644856, at *6 (citing DL Capital Group, LLC v. Nasdaq Stock Market, Inc., 409 F.3d 93, 96 (2d Cir. 2005) (federal statutory and state common-law claims); D'Alessio, supra, 258 F.3d at 98 (state law claims)).  The EFG court recognized that SROs like FINRA perform regulatory functions unique to securities self-regulation that otherwise would be performed by the immunized SEC, Empire Fin. Group, supra, 2009 WL 10644856, at *6 (quoting Barbara, supra, 99 F.3d at 59).

In Buscetto, supra, 2012 WL 1623874, in proceedings like this case, former registered securities principal and representative Bruce Buscetto unsuccessfully sought expungement of FINRA disciplinary records.  NASD filed a complaint against Buscetto alleging violations of the Securities Exchange Act.  NASD then entered an Order accepting Buscetto's Offer of Settlement to resolve the disciplinary proceeding.  Nine years later, Buscetto required a background check for a non-securities job application,

revealing the Offer of Settlement.  Buscetto then filed a Statement of Claim with FINRA seeking to expunge the disciplinary action from the CRD, but FINRA declined that request.  Buscetto proceeded to sue FINRA in state court and that case was removed to federal court.  Id. at *1.  Buscetto there sought a judgment expunging the reference to this discipline and vacating the order instituting the bar, id. at *2.

The court in Buscetto rejected this declaratory judgment on the grounds of the absolute immunity of FINRA (and its predecessor, NASD), id. at *3-4.  The court also found that "FINRA is entitled to immunity from this action, as it arises from FINRA's exercise of its regulatory functions," id. at *4 n.4 (Docket No. 14, Def. Reply Memo. at 4).

FINRA's absolute immunity is not restricted by the type of claims asserted against it by Plaintiff herein.  Absolute immunity also is not limited to damages claims as argued by Plaintiff (but cf. Docket No. 13, Pl. Memo. at 14-15).  This immunity also covers declaratory or injunctive relief.

Plaintiff Cashmore here waived SEC and judicial review of his discipline by signing the AWC.  Without this agreement, Plaintiff faced administrative proceedings before FINRA where, if Plaintiff lost, he had appeal rights to the SEC and judicial review of the Commission's decision to the United States Court of Appeals.  Plaintiff's execution of the AWC waived both sources of review.

Plaintiff's objection is that this 2012 discipline remained on FINRA's database in 2018, as required by securities law and FINRA's rules.  Plaintiff does not seek to register with FINRA.  Instead, he is registered with the SEC (Docket No. 1, Pet. at 5).

Even if this Court were to have jurisdiction over FINRA and this matter, Plaintiff puts forth his challenge to a securities regulation under state contract law.  State contract

11

law does not apply to Plaintiff's obligations under securities law, see United States v. Williams, 864 F. Supp. 305, 311-12 (E.D.N.Y. 1994) (case not governed by contract law because conditions imposed arise from statutory directive for the National Health Service Corps Scholarship Program); Rendleman v. Bowen, 860 F.2d 1537, 1541-42 (9th Cir. 1988) (Docket No. 4, Def. Memo. at 14).  As noted by the Ninth Circuit in Rendleman in discussing the National Health Service Scholarship, "in passing the statute, Congress intended to implement certain public policy goals by conditioning receipt of scholarship aid upon compliance by the recipient with federal statutory and administrative directives," 860 F.2d at 1541, these conditions "do not arise from a negotiated agreement between the parties; rather, they are provided for in the statute.  Statutory intent, therefore, is more relevant to the interpretation of these conditions than are common law contract principles," id. at 1541-42.  Similarly, the Securities Exchange Act and securities regulations set forth directives that are more relevant than contract law.

This Court is not the proper forum, and six years after entering the AWC is not the proper time, to undo the effects of Plaintiff's decision to sign the AWC.  Defendant's Motion to Dismiss (Docket No. 4) is granted.

## IV.   Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Docket No. 4) is granted.  This Court need not address further the other defenses raised by FINRA (such as exhaustion of administrative remedies, lack of a private right of action, lack of right to expungement of the BrokerCheck, and the effect of the release provisions of the AWC) in support of dismissal because of the absolute immunity enjoyed by FINRA.

## V.    Orders

IT IS HEREBY ORDERED, that Defendant's Motion to Dismiss (Docket No. 4) is

GRANTED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          November 9, 2020
                Buffalo, New York


                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge